IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:18-CT-3154-BO

| | | |
|---|---|---|
| ABDU-SALIM GOULD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| KENNETH E. LASSITER, WARDEN OF CENTRAL PRISON, BRYANT SOUCIER, and EDDIE THOMAS, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, a state inmate, filed this civil rights action *pro se* pursuant to 42 U.S.C. § 1983. The matter now comes before the court on defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (DE 17). Also before the court are plaintiff's motions for entry of default (DE 20, 22), motions for entry of default judgment (DE 22, 28, 31), motions for injunctive relief (DE 24, 29), and motion to compel discovery (DE 32). In this posture, the issues raised are ripe for adjudication.

**STATEMENT OF THE CASE**

On June 25, 2018, plaintiff, a state inmate, filed this civil rights action *pro se* pursuant to 42 U.S.C. § 1983, and then moved to amend his complaint. On October 31, 2018, the court granted plaintiff's motion to amend, and conducted an initial review of plaintiff's action. The court determined that plaintiff improperly brought unrelated claims against several unrelated defendants, and cautioned plaintiff that he may only bring a claim against multiple defendants when the claims

arise out of the same transaction or there are common questions of law or fact. Accordingly, the court directed plaintiff to file one amended complaint and cautioned plaintiff not to bring multiple unrelated claims against multiple unrelated defendants. The court also notified plaintiff that his amended complaint would be considered the complaint in its entirety and that the court would not review plaintiff's other filings to glean any misplaced claims.

On November 19, 2018, plaintiff filed an amended complaint naming as defendants Governor Roy Cooper ("Cooper"), the North Carolina Department of Public Safety ("DPS"), DPS Director Kenneth Lassiter ("Lassiter"), Central Prison Warden Eddie Thomas ("Thomas"), and Lieutenant Bryant Soucier ("Soucier"). The court subsequently conducted an initial review of plaintiff's amended complaint, and dismissed plaintiff's action against defendant DPS. The court, additionally, dismissed without prejudice plaintiff's action against defendant Cooper, as well as plaintiff's claims arising out of disciplinary proceedings initiated in response to plaintiff mailing a mouse to the court on September 10, 2018. The court, however, allowed plaintiff to proceed with the following remaining claims: violation of the Free Exercise Clause of the First Amendment to the United States Constitution; inadequate prison conditions in violation of the Eighth Amendment to the United States Constitution; violations of the Due Process Clause of the Fourteenth Amendment related to lost property and disciplinary convictions; denial of access to courts in violation of the First Amendment; and retaliation in violation of the First Amendment.

Defendants Lassiter, Thomas, and Soucier subsequently moved to dismiss plaintiff's action for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion was fully briefed. Plaintiff next filed a motion for entry of default, motions for entry of default judgment, motions for injunctive relief, and a motion to compel discovery.

## STATEMENT OF FACTS

The facts set forth in plaintiff's amended complaint are summarized as follows. On October 12, 2017, plaintiff arrived at Central Prison, and immediately began litigating a notice of appeal "which had a time limitation of 10 days." (Am. Compl. (DE 11) p. 5). "After a weeks lapse of time said notary was accomplished though indigent mail staff at time caused petitioner to be denied a writ of certiorari in the Court of Appeals." (Id.) (no alterations made to the original). Plaintiff further states that he was denied "legal services materials" and envelopes. (Id.) Between the dates of October 12, 2017 and November 9, 2018, plaintiff was "constantly" denied access to postage for his legal mail, envelopes, and notary services. (Id. p. 6).

Plaintiff additionally provides as follows:

> Upon receipt of request for trust fund account statement to the prison Administration, [plaintiff] began to be harassed and again denied all access to legal materials [and] access to courts. A memo was issued by [defendant] Lassiter on [June 1, 2018] stipulating mail room staff is to confiscate all envelopes of incoming mail. Yet no change is to come to legal. This has been taking place to petitioner's legal mail for some time now []. On [September 9, 2018, plaintiff] was taken off the job without cause and placed in segregation in retaliation for his actions with this court. On [September 19, 2018, plaintiff] was taken out of his cell placed in holding out of view and said to have STG material [and] a piece of metal in his property. From holding [plaintiff] was taken to Unit 1 manager's office and given a memo from Warden Eddie Thomas stating he has placed stipulations on [plaintiff's] mail which allows the officers to walk away from my cell with legal mail to take to their office to inspect out of my view. Nor am I allowed to see it sealed and mailed . . . .
>
> By the delay of said package [, plaintiff] is missing unexplained correspondence from the Judicial Standards Commission and NC State Bar. On the sentencing Judge who was asked to recuse, and prosecutor who was vindictive and selection of his trial. The very vital time lines of Appeal in matters of Pretrial Orders were denied due to inability to properly litigate due to withholding vital

3

> documents (mail), denied access to legal material, notary services, where [plaintiff] was is denied certiorari by the Court of Appeals.

(Id. pp. 6-7). Additionally, on June 12, 2018, defendant Soucier placed plaintiff in segregation, and plaintiff lost "numerous litigation to the courts (writ of Immediate Appeal-Summary Judgment), law books, and religious literature." (Id. p. 6).

Plaintiff, also, made several allegations related to his religious practice and a rat infestation Specifically, plaintiff asserts that the kitchen staff prevented him from entering the kitchen with his prayer rug. (Id. p. 5). Plaintiff states that kitchen staff accused him of refusing to work, but that he noticed a rat infestation in the kitchen and "wished not to pray on the floor." (Id.) Plaintiff, additionally, states that for three days he was forced to go without food during Ramadan because he was not "provided a late meal for [North Carolina Department of Public Safety ("DPS") policy] is that [i]f I take a [t]ray I am not [d]ue the meal of the fast." (Id.) With respect to the rat infestation, plaintiff contends he has complained about the infestation since his arrival at Central Prison, and that he suffered a bacterial infection from the rats. (Compl. p. 7; Mem. in Supp. p. 3). Finally, plaintiff states that he was denied grievances, "appeals," and "letters to administration." (Compl. pp. 6, 7).

## DISCUSSION

A.     Motions for Default and Default Judgment

Plaintiff moves for entry of default against defendants pursuant to Federal Rule of Civil Procedure 55(a). In support, plaintiff asserts that defendants did not timely respond to plaintiff's complaint. The record reflects that defendants filed a timely motion to dismiss pursuant to Rule 12(b)(6) on April 12, 2019. See (DE 15, 17). Accordingly, plaintiff's motion for entry of default

is DENIED. Because defendants are not in default, plaintiff's motions for default judgment, likewise, are DENIED.

B.  Motion to Dismiss

　　1.  Standard of Review

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, this plausibility standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quotations omitted).

　　2.  Analysis

　　　　a.  Free Exercise of Religion

The Free Exercise Clause of the First Amendment states that "Congress shall make no law respecting an establishment of religion." U.S. Const. Amend. I. The United States Supreme Court has applied the First Amendment to the states through the Fourteenth Amendment. See Everson v.

5

Bd. of Educ., 330 U.S. 1, 15 (1947). In order to state a claim for violation of the First Amendment's Free Exercise Clause, an inmate must establish that: "(1) he holds a sincere religious belief; and (2) a prison practice or policy places a substantial burden on his ability to practice his religion." Wilcox v. Brown, 877 F.3d 161, 168 (4th Cir. 2017) (citing Thomas v. Review Bd. of Ind. Emp't Sec. Div., 450 U.S. 707, 718 (1981)). The Fourth Circuit defines a substantial burden as follows:

> [A] "substantial burden" is one that put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs, or one that forces a person to "choose between following the precepts of her religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of her religion on the other hand.

Lovelace v. Lee, 472 F.3d 174, 182 (4th Cir. 2006). "[T]he Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional protections." Id. at 194.

Here, plaintiff's assertions that unidentified kitchen staff would not permit him to bring a prayer rug into the kitchen, that he "wished not to pray on the floor" due to a rat infestation, and that defendant Soucier confiscated his unspecified "religious literature" when he placed plaintiff on administrative segregation on November 9, 2018, are insufficient to state a First Amendment claim. As an initial matter, plaintiff has not alleged in his amended complaint any allegations regarding his religious beliefs or any prison practice or policy which places a substantial burden on his ability to practice his religion. With the exception of his allegations against defendant Soucier, plaintiff also has not alleged that any defendant was involved with the alleged conduct or that any policy substantially burdened the practice of his religion. To the extent plaintiff asserts that he was not provided a late meal during Ramadan, his own allegations reflect that he was not provided the late meal because he took a meal tray during the day. (Am. Compl. (DE 11), p. 6). Simply put, plaintiff

6

has not stated facts showing that any DPS policy or any defendants' individual actions pressured him to violate his religious beliefs or to abandon any religious precept. Lovelace, 472 F.3d at 182. Thus, plaintiff failed to state a First Amendment claim.

      b.     Prison Conditions

In order to establish that prison conditions violate the Eighth Amendment, a plaintiff must plausibly allege "(1) that the deprivation of a basic human need was *objectively* sufficiently serious, and (2) that *subjectively* the officials acted with a sufficiently culpable state of mind." De'lonta v. Johnson, 708 F.3d 520, 525 (4th Cir. 2013) (alterations omitted); Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993). A prisoner must show that "the deprivation of [a] basic human need was objectively sufficiently serious." Strickler, 989 F.2d at 1379 (emphasis and quotation omitted). "Only an extreme deprivation, that is, a serious or significant physical or emotional injury resulting from the challenged conditions, or substantial risk thereof, will satisfy the objective component of an Eighth Amendment claim challenging the conditions of confinement." De'lonta, 708 F.3d at 525 (quotation omitted).

To satisfy the subjective showing, a plaintiff must prove that the official acted with deliberate indifference. See, e.g., Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998); Strickler, 989 F.2d at 1379. "While . . . deliberate indifference entails something more than mere negligence, . . . it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). An official acts with deliberate indifference when he actually knows of and disregards "an objectively serious condition, medical need, or risk of harm." Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997); see Farmer, 511 U.S. at 837–38; Estelle v. Gamble, 429 U.S. 97, 104–05 (1976).

7

Here, plaintiff alleges that the kitchen at Central Prison is infested with rats, which caused him to suffer several bacterial infections. Plaintiff, additionally, asserts that he has grieved the issue, but that prison officials are unresponsive. These allegations state an Eighth Amendment claim. Wilson v. Johnson, 385 F. App'x 319, 320 (4th Cir. 2010) (per curiam) ("Allegations of . . . unsanitary food service facilities are sufficient to state a cognizable constitutional claim, so long as the deprivation is serious and the defendant is deliberately indifferent to the need."). Thus, plaintiff states an Eighth Amendment prison conditions claim, and defendants' motion to dismiss is DENIED with respect to this claim.

      c.      Due Process Claims

Plaintiff asserts that defendant Soucier confiscated his law books and religious material when he placed plaintiff in administrative segregation. Plaintiff also generally asserts that prison officials lost his property, including some of his legal mail.

To state a procedural or substantive due process claim, an inmate must demonstrate that he was deprived of life, liberty, or property by government action. Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). Beginning with plaintiff's procedural due process claim, he is not entitled to relief because even "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post [-]deprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984); see Mora v. City of Gaithersburg, 519 F.3d 216, 230–31 (4th Cir. 2008). Here, an adequate post-deprivation remedy is available to plaintiff in state court. See, e.g., Wilkins v. Whitaker, 714 F.2d 4, 6–7 (4th Cir. 1983). Because plaintiff has an adequate post-deprivation remedy in state court, his procedural due process claim fails.

8

As for substantive due process, the Fourth Circuit defines it as "an absolute check on certain governmental actions notwithstanding the fairness of the procedures used to implement those actions." Front Royal and Warren County Industrial Park Corp. v. Town of Front Royal, Virginia, 135 F.3d 275, 287–88 (4th Cir.1998) (internal quotation omitted). The substantive due process check "is warranted only where no process could cure the deficiencies in the governmental action .... In other words, governmental action offends substantive due process only where the resulting deprivation of life, liberty, or property is so unjust that no amount of fair procedure can rectify it." Id.

Here, the court does not find the alleged deprivation so unjust as to be incapable of avoidance by any procedural protections. Moreover, post-deprivation state remedies are available to plaintiff. Thus, plaintiff has not established a substantive due process violation. See Williams v. Crawford, 449 F. App'x 288, 289 (4th Cir. 2011) ("Because Williams had an adequate post-deprivation remedy under Virginia law for the allegedly wrongful confiscation, his property was not taken without due process."); see also, Calhoun–El v. Maynard, No. RDB–07–220, 2007 WL 5254010, at *n.9 (D. Md. Nov. 19, 2007) ("Further, allegations that a state actor has negligently or intentionally destroyed, lost, or interfered with legal mail or other personal property do not state a procedural due process claim where effective state remedies are available.") (citing Pink v. Lester, 52 F.3d 73 (4th Cir.1995)), aff'd, 267 F. App'x 252 (4th Cir. Feb. 27, 2008). Thus, the court GRANTS defendants' motion to dismiss plaintiff's claims arising out of alleged lost or stolen property.

To the extent plaintiff seeks to challenge the validity of certain disciplinary convictions he received, he is not entitled to relief. In order to recover damages for an allegedly unconstitutional conviction, a plaintiff proceeding pursuant to § 1983 must prove that the conviction or sentence at

9

issue has been reversed on direct appeal, expunged by executive order, declared invalid by state tribunal authorized to make such determinations, or called into question by a federal court's issuance of a writ of habeas corpus. Heck v. Humphrey, 512 U.S. 477, 486-487 (1994); Mobley v. Tompkins, 473 F. App'x 337, 337 (4th Cir. 2012). The holding in Heck also extends to a prisoner's claim for damages related to the loss of earned good time credits as a result of prison disciplinary proceedings. See Edwards v. Balisok, 520 U.S. 641, 646 (1997). Plaintiff does not allege that his disciplinary convictions have been invalidated. Thus, plaintiff's challenge to any disciplinary conviction is Heck-barred.

To the extent plaintiff challenges prison officials' decisions to place him in administrative segregation, he has not provided sufficient factual support for such claims. Iqbal, 556 U.S. at 678; White v. White, 886 F.2d 721, 723 (4th Cir. 1989). Rather, plaintiff makes several disconnected and random references to his alleged placement in administrative segregation, which are insufficient to state a claim. See id. Moreover, to the extent plaintiff challenges his placement in administrative segregation after mailing a mouse to the court, the court previously dismissed all claims arising out of the mouse incident.

d.   Access to Courts

Prisoners have a constitutional right to reasonable access to state and federal courts and to communicate with attorneys. See, e.g., Lewis v. Casey, 518 U.S. 343, 350–51 (1996). To state a claim for denial of access to the courts, the prisoner must show that a defendant's conduct caused the prisoner actual injury. See Lewis, 518 U.S. at 351–57; Michau v. Charleston Cty., 434 F.3d 725, 728 (4th Cir. 2006); Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996). The actual injury requirement mandates that the prisoner "demonstrate that a nonfrivolous legal claim had been

frustrated or was being impeded." Lewis, 518 U.S. at 353 (footnote omitted). Isolated incidents without negative consequences to plaintiff do not constitute a constitutional deprivation of one's rights. See, e.g., Buie v. Jones, 717 F.2d 925, 926 (4th Cir. 1983).

Plaintiff asserts that a delay in receiving notary services in connection with an appeal he was litigating in October 2017, resulted in the denial of his petition for a writ of certiorari. (Am. Compl. (DE 11) p. 5). Plaintiff, further, states that prison officials' loss of his legal mail caused plaintiff to lose summary judgment "in a civil action in USDC due to inability to appeal." (Am. Compl. (DE 11), p. 7). Plaintiff, however, does not allege that the delay in obtaining notary services or the loss of his legal mail were intentional; and negligent interference with an inmate's right of access to the courts does not state a claim pursuant to § 1983. See Pink, 52 F.3d at 76; Wise v. Lexington County Sheriff's Dept., No. 4:06-cv0-1842-RBH, 2008 WL 551618, at * 5 (D.S.C. Feb. 26, 2008), aff'd, 283 F. App'x 155 (4th Cir. 2008). Regarding plaintiff's claim asserting a delay in receiving notary services, plaintiff, additionally, has not provided any facts to connect any named defendant with the alleged conduct. Conclusory and nonspecific allegations of actual harm do not present an access to court claim. See, e.g., Cochran, 73 F.3d at 1317. Thus, plaintiff fails to adequately plead any actual injury from the above-stated allegations.

The court next turns to plaintiff's alleged mail-related restrictions. Plaintiff asserts that defendant Lassiter directed mail room staff to confiscate all of plaintiff's mail, with the exception of legal mail. (Id. p. 6). Plaintiff, further, states that defendant Thomas placed "stipulations" on his incoming mail, which allowed Central Prison staff to inspect plaintiff's legal mail out of his view. (Id.) To the extent plaintiff asserts a First Amendment claim based upon the alleged mail restrictions, he again fails to state a claim. Generally, the First Amendment provides prisoners the

11

right to send and receive mail. See Thornburgh v. Abbott, 490 U.S. 401, 407 (1989); Hudson, 468 U.S. at 547. Prison officials, however, may adopt regulations that impinge on a prisoner's constitutional rights if those regulations are "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). Moreover, in assessing prison management, the Supreme Court has "afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world." Thornburgh, 490 U.S. at 408; see Kaden v. Slykhuis, 651 F.3d 966, 968 (8th Cir. 2011) (per curiam) ("[P]rison officials may lawfully censor prison mail that is detrimental to the security, good order and discipline of the institution."). In order to maintain prison security and to check for contraband, prison officials may, pursuant to a uniform and evenly applied policy, open and examine an inmate's incoming mail. See Wolff v. McDonnell, 418 U.S. 539, 574–77 (1974); see Bell v. Wolfish, 441 U.S. 520, 555 (1979) (noting packages "are handy devices for the smuggling of contraband").

Here, plaintiff abused the DPS's outgoing legal mail procedures when he mailed a mouse to this court on September 10, 2018. See (DE 12). The restrictions placed on plaintiff's outgoing legal and nonlegal mail are reasonably related to legitimate penological interests of public health and safety. Regarding any other mail-related access to courts claims, plaintiff makes only general and conclusory allegations regarding the alleged mail restrictions, and has not alleged facts sufficient to state a claim. See Iqbal, 556 U.S. at 678; White, 886 F.2d at 723. Thus, the court GRANTS the motion to dismiss these claims.

To the extent plaintiff asserts that any defendant interfered with his grievance procedure, inmates do not have any constitutional right or due process interest in a grievance procedure. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to

12

grievance procedures or access to any such procedure voluntarily established by a state."); Booker v. S.C. Dep't of Corr., 855 F.3d 533, 541 (4th Cir. 2017) ("*Adams* establishes a clear rule: inmates have no constitutional entitlement or due process interest in access to a grievance procedure. An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance process, for example."). Thus, plaintiff fails to state a claim.

   e.   Retaliation

"The First Amendment grants the rights to free speech and to seek redress of grievances. These rights, to a limited extent, exist in a prison setting." Gullet v. Wilt, No. 88-6797, 1989 WL 14614, at *2 (4th Cir. 1989) (per curiam). To state a claim for retaliation, a plaintiff must allege:

> "that (1) [he] engaged in protected First Amendment activity, (2) [defendants] took some action that adversely affected [his] First Amendment rights, and (3) there was a causal relationship between [his] protected activity and [defendants'] conduct." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005). With respect to the second element, [plaintiff must] . . . "show that [defendants'] conduct resulted in something more than a de minimis inconvenience to [his] exercise of First Amendment rights." Id. at 500 (internal quotation marks omitted).

Booker v. S. Carolina Dep't of Corr., 583 F. App'x 43, 44 (4th Cir. 2014) (per curiam) (alterations in original omitted).

Plaintiff generally asserts that his mail restrictions are retaliatory, and that he was denied access to legal materials after he requested his inmate trust fund statement. Plaintiff, additionally, alleges he lost his prison job on September 9, 2018, in retaliation for his actions with this court.[1] Plaintiff, however, provides no factual support for these claims, and makes no effort to connect the

---

[1] The court notes that inmates do not have a constitutional right to a prison job. See Altizer v. Paderick, 569 F.2d 812, 813 (4th Cir. 1978) ("[W]ork assignments of prisoners . . . are matters of prison administration, within the discretion of prison administrators," and do not implicate the due process clause.).

named defendants with the alleged retaliatory conduct. In particular, plaintiff alleges no facts in related to a causal relationship between the alleged protected activity and retaliatory conduct. Plaintiff, instead, makes only conclusory and speculative allegations, which are insufficient to state a constitutional violation. See Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994); Wagner v. Wheeler, 13 F.3d 86, 91 (4th Cir.1993) ("Temporal proximity . . . is simply too slender a reed on which to rest a Section 1983" a retaliation claim); Thomas v. Fed. Med. Ctr., No. 5:14-CT-3261-BO, 2015 WL 2193787, at *2 (E.D.N.C. May 11, 2015) ("[C]onclusory assertions of retaliation, discrimination, and conspiracy do not state actionable claims."). Thus, plaintiff failed to state a claim for retaliation.[2]

C.    Motions for Injunctive Relief

Plaintiff makes numerous requests for injunctive relief. However, none of his requests are related to his sole remaining claim–that defendants acted with deliberate indifference to a known rat infestation. Claims which are unrelated to the allegations asserted in the complaint cannot serve as the basis for injunctive relief. See Imagine Medisja, LLC v. Transformations, Inc., 999 F. Supp. 2d 862, 867 (S.D.W. Va. Feb. 26, 2014). Further, plaintiff failed to demonstrate that he likely is to succeed on the merits, and has not alleged facts necessary to demonstrate that he likely would suffer irreparable harm if his motion is not granted. Additionally, the public interest is best served if courts do not get involved with the daily operations of a prison, especially prior to the finding of a constitutional violation. See Florence v. Board of Chosen Freeholders of County of Burlington, 566 U.S. 318, 328 (2012). Thus, plaintiff's motions for injunctive relief are DENIED.

---

[2] The court notes that the court dismissed without prejudice any claim related to plaintiff sending a mouse to the court. See (DE 13). Accordingly, plaintiff's alleged retaliation claim related to his placement in administrative segregation after he sent a mouse to the court has been dismissed without prejudice.

14

D.   New Claims

Plaintiff makes several new claims in response to defendants' motion to dismiss, including mail and access to courts claims arising in 2019. Plaintiff also newly asserts that he is unable to obtain a halal or kosher diet at Central Prison. Plaintiff's new claims are not properly before the court because plaintiff has not requested leave of court to amend his complaint pursuant to Federal Rule of Civil Procedure 15(a). See Mohammed v. Daniels, No. 5:13-CT-3077-FL, 2015 WL 470469, at *3, n.2 (E.D.N.C. Feb. 4, 2015) ("To the extent plaintiff attempts to raise new claims in his responses to defendants' motions to dismiss, those claims are not properly before the court and will not be considered.") (citing Henson v. Lambert, No. RWT-12-3271, 2013 WL 4008882, at *1, n.1 (D. Md. Aug. 2, 2013), appeal dismissed, 557 F. App'x 245 (4th Cir. 2014)). Thus, plaintiff's new claims are DISMISSED without prejudice.

The court additionally notes that plaintiff's filings in this actions are voluminous, repetitive, unclear, and disjointed. The court has done its best to discern plaintiff's allegations under these circumstances. To the extent there are any allegations the court has not addressed, plaintiff has not presented sufficient factual support or clarity with respect to such allegations. Thus, any remaining claims are DISMISSED without prejudice for lack of factual support. See White, 886 F.2d at 723; Cosner v. Dodt, 526 F. App'x 252, 254 (4th Cir. 2013) ("Had Cosner's complaint been dismissed without prejudice, he would have been able to construct a new complaint with these facts, and perhaps others.").

## CONCLUSION

Based upon the foregoing, the court orders as follows:

(1) Defendants' motion to dismiss (DE 17) is GRANTED as to all claims, except plaintiff's claim that defendants violated the Eighth Amendment because they acted with deliberate indifference to the rat infestation. The dismissal of plaintiff's claims is without prejudice given the court's inability to discern plaintiff's rambling and disjointed pleadings;

(2) Any new claims plaintiff asserted in response to defendants' motion to dismiss also are DISMISSED without prejudice;

(3) Plaintiff's motion for entry of default (DE 20, 22) and his motions for entry of default judgment (DE 22, 28, 31) are DENIED;

(4) Plaintiff's motions for injunctive relief (DE 24, 29) are DENIED;

(5) Because the court has not yet issued a scheduling order setting a discovery deadline, plaintiff's motion to compel discovery (DE 32) is DENIED without prejudice;

(6) The Clerk of Court is DIRECTED to refer this action to a magistrate judge for the issuance of a scheduling order.

SO ORDERED, this the 19 day of December, 2019.

Terrence W. Boyle
TERRENCE W. BOYLE
Chief United States District Judge